## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TRI CITY FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 24 C 414 |
| | ) | |
| COMMERCE & INDUSTRY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

In this insurance coverage dispute, Plaintiff Tri City Foods, Inc. ("TCF") filed suit for breach of contract and declaratory judgment, seeking a declaration that its liability umbrella insurance carrier, Defendant Commerce & Industry Insurance Company ("C&I"), owes a duty to defend TCF in a class action lawsuit currently pending in the Circuit Court of Cook County, Illinois, that C&I breached that duty to defend, and that C&I is estopped from reserving rights to deny indemnification. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, TCF's motion is granted in part and denied in part, and C&I's cross-motion is granted in part and denied in part.

## BACKGROUND

As an initial matter, at the time this case was filed, TCF sought coverage under two C&I umbrella policies: one covering the period of November 20, 2015, to November 20, 2016, and the other covering the period of November 20, 2016, to November 20, 2017. However, TCF concedes that based on the Seventh Circuit's recent decision in *Thermoflex v. Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 102 F.4th 438 (7th Cir. 2024), the "access to and disclosure of" exclusion of the 2016–2017 policy forecloses coverage under that policy. *See* Dkt. # 49, at 6 n.1. Accordingly, the Court denies TCF's motion for summary judgment and grants C&I's cross-motion for summary judgment with respect to the 2016–2017 policy. The discussion below pertains only to the 2015–2016 umbrella policy (hereafter, the "C&I Policy").

The following facts are taken from the record and are undisputed unless otherwise noted.

### The *Young* Lawsuit

On October 22, 2018, Joe Young filed a complaint on behalf of himself and a putative class of individuals (the "*Young* Lawsuit") against TCF for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Young named NCR Corporation ("NCR"), a third-party vendor of TCF's timekeeping equipment, as a respondent-in-discovery.[1] In his complaint, Young alleges that he worked for TCF from July 2017 through July 2018. Young alleges that TCF required

---

[1] NCR was dismissed as a party on May 2, 2019. *See* Dkt. # 53-1, at 2.

him to scan his fingerprint at the beginning and end of each workday, but that he was never informed of the specific purposes or length of time for which TCF collected, stored, or used his fingerprint. Additionally, Young alleges that TCF never informed Young of any biometric data retention policy or sought a written release from Young to collect and store his fingerprint data. Young specifically alleges violations of Sections 15(a) and 15(b) of BIPA.

Young seeks to certify a class of similarly situated individuals, which he defined in his complaint as "All residents of the State of Illinois who had their biometric identifiers or biometric information collected, captured, received, otherwise obtained, or disclosed by Tri City while residing in Illinois." Dkt. # 36, ¶ 24. Among the common questions of fact raised by Young is "whether [TCF] has sold, leased, traded, or otherwise profited" from Young's and the class members' biometric information. *Id.* ¶ 25. Finally, Young alleges that TCF "violated Plaintiff's and the class's rights to privacy" in their biometric information. *Id.* ¶ 23.

**TCF's Employment Practices Liability Insurer**

On November 12, 2018, TCF tendered the *Young* Lawsuit to its employment practices liability insurer, National Union Insurance Company of Pittsburgh ("National Union"). TCF sought coverage under its Employment Practices Liability Insurance Policy, for the policy period January 1, 2018, to January 1, 2019 (the "EPL Policy").

The EPL Policy provides coverage on a claims-made basis for "wrongful acts," defined by the EPL Policy to include risks such as wrongful termination, harassment,

or discrimination. The limit of liability for the EPL Policy is $5,000,000 for covered judgments, settlements, and defense costs. The retention applicable to the *Young* Lawsuit and the EPL Policy was $200,000.

On December 28, 2018, National Union determined that the EPL Policy was potentially triggered by the *Young* Lawsuit and began defending TCF under a reservation of rights.

### TCF's Commercial General Liability Insurer

On March 25, 2019, TCF tendered the *Young* Lawsuit to its primary commercial general liability insurer, Travelers Property Casualty Company of America ("Travelers"). Travelers issued to TCF commercial general liability ("CGL") policies for the policy periods of November 20, 2015, to November 20, 2016, and November 20, 2016, to November 20, 2017. By agreement, the 2016–2017 policy period was extended to January 1, 2018. Travelers then issued to TCF a new CGL policy for the policy period January 1, 2018, to January 1, 2019.

The three Travelers policies each included an endorsement that revised the definition of "personal and advertising injury" to mean: "'personal injury' or 'advertising injury.'" Dkt. # 53, ¶ 15. The three Travelers policies, as amended by the endorsement, eliminated from the definitions of "personal injury" and "advertising injury" the following offense: "Oral or written publication, in any manner, of material that violates a person's right to privacy[.]" Dkt. # 53, ¶ 16. All three Travelers policies included the following exclusion: "'Personal injury' or 'advertising injury' arising out

4

of any access to or disclosure of any person's or organization's confidential or personal information." Dkt. # 53, ¶ 17.

On May 13, 2019, Travelers denied coverage of the *Young* Lawsuit under the Travelers policy for the 2018–2019 policy period. Travelers denied coverage on the grounds that the *Young* Lawsuit did not allege a covered personal injury or advertising injury.

**The C&I Policy**

On or about May 21, 2023, TCF tendered the *Young* Lawsuit to C&I. The Insuring Agreement of the C&I Policy states that C&I "will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies or because of Bodily Injury or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract." Dkt. # 47, ¶ 36 (emphases denoting defined terms omitted[2]).

The Defense Provisions of the C&I Policy provide that C&I:

will have the right and duty to defend any Suit against the Insured that seeks damages for . . . Personal Injury and Advertising Injury covered by this policy, even if the Suit is groundless, false or fraudulent when . . . the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss to which this policy applies and the total applicable limits of Other Insurance have been exhausted; or . . . the damages sought because of . . . Personal Injury and Advertising Injury

---

[2] Emphases denoting defined terms are omitted throughout this Memorandum Opinion.

would not be covered by Scheduled Underlying Insurance or any applicable Other Insurance, even if the total applicable limits of either the Scheduled Underlying Insurance or any applicable Other Insurance had not been exhausted by the payment of the Loss.

Dkt. # 47, ¶ 38.  The C&I Policy lists the Travelers policies for the respective years as the "Scheduled Underlying Insurance."

"Other Insurance" is defined to mean "a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy."  Dkt. # 1-1, at 26.  However, "Other Insurance does not include Scheduled Underlying Insurance, the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords."  *Id.*

"Personal Injury and Advertising Injury" is defined, in relevant part, as "injury arising out of your business, including consequential Bodily Injury," arising out of the enumerated offense of "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."  Dkt. # 36, ¶ 13.

"Retained Limit" is defined to mean either "the total applicable limits of Scheduled Underlying Insurance and any applicable Other Insurance providing coverage to the Insured" or "the Self-Insured Retention applicable to each Occurrence that results in damages not covered by the Scheduled Underlying Insurance nor any applicable Other Insurance providing coverage to the insured."  Dkt. # 47, ¶ 37.

6

The C&I Policy contains the following provision: "The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage." Dkt. # 36, ¶ 15.

The C&I Policy contains two exclusions which C&I contends apply to preclude coverage in this case. The "Violation of Laws Exclusion" provides:

> W. Violation of Communication or Information Law
>
> This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

Dkt. # 36, ¶ 16.

The "Employment Practices Exclusion" provides:

> J. Employment Practices
>
> This insurance does not apply to any liability arising out of:
>
> 1. failure to hire any prospective employee or any applicant for employment;
>
> 2. dismissal, discharge or termination of any employee;
>
> 3. failure to promote or advance any employee; or
>
> 4. employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:
>
>> a. coercion, harassment, humiliation or discrimination;
>> b. demotion, evaluation, reassignment, discipline, or retaliation;
>> c. libel, slander, humiliation, defamation, or invasion of privacy; or
>> d. violation of civil rights.

7

Dkt. # 1-1, at 11.

TCF filed this lawsuit on January 17, 2024, asserting a claim for breach of contract, as well as seeking a declaration that C&I: owed TCF a duty to defend the *Young* Lawsuit, breached that duty, and is estopped from reserving rights to deny indemnification in the event of a settlement or adverse judgment in the *Young* Lawsuit.

C&I asserted a counterclaim, seeking a declaration that it owes no defense or indemnity obligation to TCF concerning the *Young* Lawsuit, which the Court struck as redundant. *See* Dkt. # 61. These cross-motions for summary judgment followed.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be

8

true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## **DISCUSSION**

In its motion, TCF seeks summary judgment in its favor in the form of a declaration that C&I owes a duty to defend TCF in the *Young* Lawsuit and that C&I breached its duty. In C&I's cross-motion, C&I seeks summary judgment in its favor in the form of a declaration that it owes no duty to defend or indemnify TCF in connection with the *Young* Lawsuit because TCF has not proven that all "Underlying Insurance" and "Other Insurance" policies have been exhausted or do not cover the lawsuit, the allegations in the *Young* complaint do not allege a covered injury, and certain policy exclusions apply to bar coverage.

Under Illinois law[3], "the proper interpretation of an insurance policy is a question of law." *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 995 (7th Cir. 2023); *Zurich Am. Ins. Co. v. Infrastructure Eng'g, Inc.*, 2024 IL 130242, ¶ 31 ("Construction of the terms of an insurance policy is a question of law properly decided on a motion for summary judgment."). In examining the terms of the policy, "the

---

[3] The parties appear to agree that Illinois law governs the Court's interpretation of the C&I Policy, as both parties cite to Illinois law in their briefs. C&I notes that it cites to Illinois law because it "has not identified any substantive difference between the law of Illinois, where the *Young* Lawsuit was filed, and the law of Texas, where it issued the Umbrella Policies, with respect to the legal arguments concerning the scope of coverage in the parties' cross-motions for summary judgment." Dkt. # 35, at 12 n.7. Thus, C&I does not ask the Court to conduct a choice-of-law analysis, and the Court will not endeavor to do so.

normal rules of contract interpretation apply." *Wynndalco*, 70 F.4th at 995; *see also Hess v. Est. of Klamm*, 2020 IL 124649. The primary objective in interpreting an insurance policy is "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021) (citing *Sanders v. Ill. Union Ins. Co.*, 2019 IL 124565, ¶ 22). The policy's provisions must be viewed as a whole, and meaning must be given to each provision. *Wynndalco*, 70 F.4th at 995 (citing *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010)). If the terms of the insurance contract are clear and unambiguous, the court will give them their plain and ordinary meaning. *Sanders*, 2019 IL 124565, ¶ 23; *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 32. Conversely, if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the contract. *Krishna*, 2021 IL 125978, ¶ 32.

## I. The Duty to Defend

In determining a duty to defend, the Court compares the allegations in the underlying complaint with the relevant portions of the insurance policy. *Nat'l Fire Ins. Co. of Hartford v. Visual Pak Co.*, 2023 IL App (1st) 221160, ¶ 31. If the facts alleged in the underlying complaint even *potentially* fall within the policy's coverage, the insurer must defend the insured in the underlying lawsuit. *Id.* As noted above, C&I argues it owes no duty to defend because the *Young* Lawsuit does not allege a covered injury, certain exclusions apply to bar coverage, and TCF has not exhausted its

Scheduled Underlying Insurance or Other Insurance. The Court addresses each argument in turn.

### A. Personal Injury and Advertising Injury

As relevant to this case, the C&I Policy defines "Personal Injury and Advertising Injury" to include "an injury arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy." Dkt. # 36, ¶ 13. C&I argues it has no duty to defend or indemnify TCF because the *Young* Lawsuit does not allege a "personal injury and advertising injury" because it does not allege a "publication" within the meaning of the C&I Policy and as that term is defined by Illinois law.

Specifically, C&I points out that the *Young* Lawsuit asserts claims for violations of Sections 15(a) and 15(b) of BIPA only, neither of which have anything to do with "publication."[4] TCF accuses C&I of looking to the legal label of Young's claims, rather than the factual allegations. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010) (in determining whether a duty to defend exists, Illinois law "give[s] little weight to the legal label that characterizes the underlying allegations."). In response, C&I argues that the statutory sections of BIPA under which

---

[4] Section 15(a) of BIPA requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying the biometric identifiers or biometric information." 740 ILCS 14/15(a). Under Section 15(b) of BIPA, a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" biometric identifiers without first obtaining written, informed consent. 740 ILCS 14/15(b).

Young asserts his claims govern the relief and damages that can be sought, as well as the type of conduct for which TCF can be liable. Because the claims in the *Young* Lawsuit are asserted under Sections 15(a) and 15(b) only, C&I says, Young only seeks to hold TCF liable "for failing to disclose and obtain a written release to collect and store biometric data, but not the dissemination (i.e. publication) of such data." Dkt. # 54, at 7.

TCF points out that NCR was originally named as a respondent in discovery, and any transfer of biometric data between TCF and NCR would constitute "publication" and thereby trigger coverage. With respect to NCR, the *Young* complaint alleges:

> Respondent in Discovery [NCR] provides [TCF] with the hardware and software for its employee time tracking service. As such, Plaintiff has a good faith basis to believe that NCR possesses information essential to determine proper additional defendants in this action. For instance, Plaintiff believes NCR possesses information that can identify additional individuals or entities that may have collected, used, and stored Plaintiff's and the putative Class members' biometric information.

Dkt. # 1-3, ¶ 9.

C&I claims that none of the *Young* complaint's allegations regarding NCR suggest that biometric information was actually shared with NCR. TCF disagrees, arguing that this allegation puts the issue of publication "directly at issue" and "implicates NCR as a recipient of Young's biometric information by virtue of its role as [TCF's] vendor of the biometric systems and hardware." Dkt. # 49, at 10. TCF further asserts the *Young* complaint's allegation that TCF never informed Young "of the purposes for which it collected, stored, or used his fingerprint" is sufficient because

12

"[s]torage could have occurred with a third-party vendor such as NCR." Dkt. # 23, at 7.

TCF also argues that publication is alleged because the proposed class definition includes individuals who had their biometric information "disclosed" by TCF. C&I says the class definition is irrelevant since Young, as the lead plaintiff, must have suffered the same injury, and there is no allegation of publication of Young's biometric information. However, the complaint identifies as a common question of fact "whether [TCF] has sold, leased, traded, or otherwise profited from" Young's and the class's biometric information. Dkt. # 1-3, ¶ 38.

In the Court's view, these allegations, combined with the allegation that NCR has information that would help determine "proper additional defendants" that "may have collected, used, and stored" Young's and the class members' biometric information, suggest potential improper disclosure (i.e., publication). Again, the Court must construe the *Young* complaint liberally in favor of TCF. In doing so, the Court cannot say that it is *clear* from the face of the underlying complaint that the *Young* Lawsuit does not *potentially* fall within the C&I Policy's coverage.

### B. Policy Exclusions

C&I next argues that, even if the *Young* Lawsuit alleges publication, two exclusions in the C&I Policy nevertheless bar coverage for TCF. "An insurer bears not only the burden of showing that an exclusion from coverage applies but that its applicability is 'clear and free from doubt.'" *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,

20 F.4th 311, 320 (7th Cir. 2021) (citing *4220 Kildare, LLC v. Regent Ins. Co.*, 2020 IL App (1st) 181840, ¶ 32).

### 1. Violation of Laws Exclusion

The Violation of Laws Exclusion provides, in relevant part:

W. Violation of Communication or Information Law

This insurance does not apply to any liability arising out of any act that violates any statute . . . ***that prohibits or limits the sending, transmitting or communicating of material or information***.

Dkt. # 36, ¶ 16 (emphasis added).

In *Krishna*, the Illinois Supreme Court considered an exclusion — titled "Violation of Statutes that Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information" — with similar language.  There, the exclusion blocked coverage of:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, ***that prohibits or limits the sending, transmitting, communicating or distribution of material or information***.

2021 IL 125978, ¶ 9 (emphasis added).  Applying the *ejusdem generis* canon, the court held that the third part of this exclusion — "[a]ny statute . . . that prohibits or limits the sending [etc.] of material or information" — did not apply to BIPA claims because BIPA "does not regulate methods of communication."  *Id.* ¶¶ 58–59.

The exclusion in this case is arguably broader than the one at issue in *Krishna* because it does not enumerate specific statutes to which the exclusion would apply. C&I urges the Court to follow *Westfield Ins. Co. v. UCAL Sys., Inc.*, 2024 WL 3650118 (N.D. Ill. Aug. 5, 2024), and find that the catch-all nature of the Violation of Laws Exclusion applies to BIPA claims. In that case, the exclusion — titled "Recording and Distribution of Material or Information In Violation of Law Exclusion" — applied to claims under the TCPA, the CAN-SPAM Act, the FCRA, and FACTA, and also had a catch-all provision that barred coverage for injury arising out of any law (other than those enumerated) "that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." But that catch-all provision encompasses far more than C&I's exclusion, which applies only to a law "that prohibits or limits the sending, transmitting or communicating of material or information." That is precisely the language considered in *Krishna*. [5]

In the end, the Court cannot say that the applicability of the Violation of Laws Exclusion to BIPA claims is "clear and free from doubt." At a minimum, there exists an ambiguity that must be resolved in the insured's favor.

---

[5] C&I attempts to distinguish its exclusion from the one in *Krishna*, the title of which gave specific examples of methods of communication, including e-mails, faxes, and phone calls. In contrast, the Violation of Laws Exclusion is titled, "Violation of Communication or Information Law." True, the *Krishna* court began its analysis by considering the title of the exclusion. However, the C&I Policy specifically provides that "[t]he descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage." Dkt. # 36, ¶ 15.

### 2. Employment Practices Exclusion

The Employment Practices Exclusion provides, in relevant part:

J. Employment Practices

This insurance does not apply to any liability arising out of: ***

4. employment-related practices, policies, acts, omissions, or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

a. coercion, harassment, humiliation or discrimination;
b. demotion, evaluation, reassignment, discipline, or retaliation;
c. libel, slander, humiliation, defamation, or ***invasion of privacy***; or
d. violation of civil rights.

Dkt. # 36, ¶ 18 (emphasis added).

The Court agrees with TCF's characterization of C&I's reliance on the Employment Practices Exclusion as "halfhearted." C&I relies on a single case in support of its position, *Am. Fam. Mut. Ins. Co. v. Caremel, Inc.*, 2022 WL 79868 (N.D. Ill. 2022), and ignores TCF's citations to numerous subsequent cases in which courts have considered similar (but not identical) exclusions and decided in favor of the insured. *See* Dkt. # 23, at 13 (collecting cases). A key distinction between C&I's Employment Practices Exclusion and those evaluated in the cases cited by TCF is that the C&I exclusion includes "invasion of privacy" as an example of an employment-related practice that is not covered. TCF asserts that the inclusion of "invasion of privacy" renders the exclusion ambiguous. This is because, TCF says, the insuring agreement provides coverage for publication "of material that violates a person's right

16

of privacy," yet the exclusion disclaims "precisely that same coverage." Dkt. # 23, at 14.

In the Court's view, the key is how the policy, practice, act, or omission is defined. Other courts considering similar employment-related practices exclusions (albeit without the "invasion of privacy" language) viewed the policy or practice at issue to be requiring workers to clock-in and clock-out with their fingerprint – something that "isn't the type of practice or policy envisioned by the full text of the provision." *State Auto. Mut. Inc. Co. v. Tony's Finer Foods Enters., Inc.*, 589 F. Supp. 3d 919, 9330 (N.D. Ill. 2022). In *Caremel*, on the other hand, the court framed its definition of the practice in question as a BIPA violation, rather than a timekeeping policy.

Here, because "the conduct at issue could be framed, for example, as a policy of biometric time keeping, a practice of collecting, storing, and transmitting biometric information, an act of violating BIPA [(i.e., an "invasion of privacy")], or the omission of obtaining authorization," an ambiguity exists in the Employment Practices Exclusion as applied. *See Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 2023 WL 319235, at *10 (N.D. Ill. Jan. 19, 2023), *aff'd,* 102 F.4th 438 (7th Cir. 2024). The Court agrees. That ambiguity must be construed in TCF's favor and against C&I.

Because the *Young* Lawsuit is potentially within the scope of coverage and neither the Violation of Laws Exclusion nor the Employment Practices Exclusion act to

definitively bar coverage, the Court finds that C&I owes TCF a duty to defend – with one caveat, addressed below.

## C. Exhaustion

C&I next argues that it has no duty to defend because TCF's primary insurance policies—the Travelers policies—are not exhausted and one of TCF's other insurers—National Union—is already providing coverage under the EPL Policy, which C&I asserts falls within the definition of "Other Insurance."

With respect to the Travelers policies, C&I argues that the record evidence does not support TCF's claim that Travelers denied coverage under its CGL policies. As evidence that Travelers denied coverage, TCF put forth a denial letter from Travelers which refers only to the 2018–2019 policy. Thus, C&I argues there is no evidence Travelers denied coverage under the earlier Travelers policies that directly underlie the C&I Policy, so there is no evidence of exhaustion. C&I further asserts that TCF has not established that the *Young* Lawsuit would not be covered by the earlier Travelers policies or any Other Insurance.

However, C&I admits that Travelers denied coverage under the 2018–2019 CGL policy on the grounds that the *Young* Lawsuit did not allege a covered "Personal Injury" or "Advertising Injury." The definitions and exclusion Travelers relied on in denying coverage under the 2018–2019 Travelers policy are found in each of the relevant Travelers policies (but not the C&I Policy). Therefore, TCF says it has established that

18

the "Scheduled Underlying Insurance" does not cover or even potentially cover the claims at issue in the *Young* Lawsuit. The Court agrees.

As for whether the EPL Policy constitutes "Other Insurance," TCF argues that it does not because the policies cover different risks. Specifically, TCF says the EPL Policy is written on a claims-made basis, whereas the C&I Policy provides occurrence-based coverage. Additionally, the subject matter covered by the two policies is disparate, because the C&I Policy covers the risk of liability for "bodily injury," "property damage," or "personal injury and advertising injury" to third parties caused by the insured's negligence, whereas the EPL Policy covers risks of liability for "wrongful acts" such as wrongful termination, harassment, or discrimination.

In response, C&I accuses TCF of conflating the operation of "Other Insurance" conditions in policies for disputes concerning priority of coverage, which is not at issue in this case because the C&I Policy explicitly requires exhaustion of all Other Insurance before that policy responds to a loss. C&I further argues that the fact that the two policies cover different risks is irrelevant.

Again, C&I's duty to defend is triggered if either: (1) the limits of the relevant Travelers policies and any Other Insurance policy are exhausted, or (2) the relevant Travelers policies and any Other Insurance policy would not cover the damages sought. National Union is defending the *Young* Lawsuit, and the EPL Policy squarely falls within the definition of "Other Insurance"—it is "a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy."

Dkt. # 1-1, at 26. So, while the Court concludes C&I owes a duty to defend, that duty does not begin until the limits of the Other Insurance have been exhausted.[6] *See Thermoflex*, 102 F.4th at 443–44; *Metzger v. Country Mut. Ins. Co.*, 2013 IL App (2d) 120133, ¶ 20 ("Thus, if there is even potential coverage, the insurer must assume the defense of the underlying lawsuit, unless the insurer is secondary or excess, in which case the insurer's duty to defend will not arise until the limits in the primary policy are reached.").

## II.    Estoppel

One final issue remains. In its complaint, TCF seeks a declaration that C&I is estopped from reserving rights to deny indemnification in the event of a settlement or adverse judgment in the *Young* Lawsuit. However, TCF's sole reference to estoppel in its memorandum in support of its motion for summary judgment is a single sentence in the introductory paragraphs: "Furthermore, because C&I had actual notice as early as November 12, 2018, and yet failed to acknowledge the claim, let alone defend or deny coverage, C&I is now estopped from denying coverage defenses with regard to its

---

[6] In its reply brief, C&I argues that, even if it owes a duty to defend, that duty is only triggered after TCF proves that the limits of the underlying policy and Other Insurance have been exhausted *and* that the total applicable Self-Insured Retention ("SIR") has been satisfied by the payment of "Loss." C&I argues "Loss" by its definition "does not include defense or investigative costs – it includes only those amounts paid by Plaintiff for settlements or judgments." Dkt. # 54, at 9. However, arguments raised for the first time in a reply brief are waived. *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023). Even if the Court were to consider the argument, a reading of the C&I Policy reveals that the SIR clause applies to C&I's duty to indemnify; C&I's defense obligations do not depend on the exhaustion of the SIR.

eventual duty to indemnify Tri City Foods for any adverse verdict that may result from the *Young* Class Action." Dkt. # 23, at 2.

Unfortunately for TCF, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citation omitted). TCF attempts to argue the issue in its reply brief, but, "[j]ust as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs." *Williams*, 85 F.4th at 849 (citation omitted). In any event, the estoppel doctrine applies only "where an insurer has breached its duty to defend." *Employers Ins. v. Ehlco Liquidating Tr.*, 186 Ill. 2d 127, 151 (1999). C&I's duty to defend has not yet been triggered, so there can be no finding that C&I breached its duty.

The Court makes no finding with respect to C&I's duty to indemnify because, at this point, C&I's indemnity obligations are speculative and depend on the outcome of the litigation. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (a "declaration that A must indemnify B if X comes to pass has an advisory quality," so "decisions about indemnity should be postponed until the underlying liability has been established"). Because the Court declines to declare a duty to indemnify because the insured has incurred no liability yet, to the extent that TCF seeks declaratory relief regarding C&I's indemnity obligations, that claim is dismissed without prejudice. *See Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010); *Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995).

## **CONCLUSION**

For the foregoing reasons, TCF's Motion for Summary Judgment [22] is granted in part and denied in part, and C&I's Cross-Motion for Summary Judgment [33] is granted in part and denied in part. With respect to the duty to defend under the 2016–2017 C&I Policy, TCF's motion for summary judgment is denied, and C&I's cross-motion for summary judgment is granted. C&I owes no duty to defend TCF under the 2016–2017 C&I Policy.

With respect to the duty to defend under the 2015–2016 C&I Policy, TCF's motion for summary judgment is granted, and C&I's cross-motion for summary judgment is denied. C&I owes a duty to defend under the 2015–2016 C&I Policy once the limits of the Other Insurance have been exhausted

Because C&I's duty to defend under the 2015–2016 C&I Policy has not yet been triggered, TCF's motion for summary judgment as to its breach of contract claim is denied, and that claim is dismissed without prejudice as premature. Additionally, Count II of TCF's complaint, to the extent it seeks declaratory relief related to C&I's duty to indemnify, is dismissed without prejudice.

By 12/11/2024, the parties shall file a Joint Status Report regarding what issues, if any, remain pending in light of the above.

It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Date: November 26, 2024